10cv2550
RHK/RLN

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA INDEPENDENT EQUAL ACCESS CORPORATION )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SPRINT COMMUNICATIONS COMPANY, )<br>L.P., )<br>Defendant. ) | Court File No. _____<br><br>**COMPLAINT**<br>(with Jury Demand) |

Plaintiff Minnesota Independent Equal Access Corporation ("MIEAC" or "Plaintiff"), by and through its attorneys, brings this Complaint against Sprint Communications Company L.P. ("Sprint" or "Defendant") and alleges as follows:

## NATURE OF THIS ACTION

1. This is a collection action arising from Sprint's refusal to pay for MIEAC's interstate "centralized equal access" ("CEA") services that Sprint ordered from MIEAC and used to complete Sprint's long distance customers' calls.

2. MIEAC's interstate CEA services are offered pursuant to MIEAC's federal tariff on file with the Federal Communications Commission (the "FCC Tariff") and are governed by the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.* (the "Communications Act"). MIEAC's FCC Tariff is attached hereto as Exhibit 1.

3. MIEAC provides CEA service to 47 long distance carrier customers, including Sprint, by delivering their "originating" and "terminating" traffic to and from

424352.1

SCANNED
JUN 21 2010
U.S. DISTRICT COURT MPLS

several dozen local telephone companies (known as "local exchange carriers) serving rural Minnesota that are connected to MIEAC's network (the "Interconnected LECs"). MIEAC serves as the intermediate link between its long distance carrier customers and the Interconnected LECs, routing calls between them through MIEAC's switches, known as "tandem switches."

4. MIEAC provides originating interstate CEA services when a long distance company customer who is provided telephone service by one of the Interconnected LECs places an out of state long distance call. In that instance, MIEAC takes the call from the Interconnected LEC and transports the call to the long distance company for transmission to the called number

5. MIEAC provides interstate terminating CEA services when a customer of a long distance company located outside of Minnesota places a long distance call to a called number served by one of the Interconnected LECs. In that instance, the long distance company transports the call to MIEAC, MIEAC takes the call from the long distance company, and transports the call over MIEAC's network to the Interconnected LEC. The Interconnected LEC then completes the call to the called number.

6. At issue in this Complaint are the interstate originating and terminating CEA services that MIEAC provided to Sprint. Hereinafter, all references to MIEAC's CEA services are to MIEAC's interstate CEA services offered pursuant to its FCC Tariff.

7. As of May 31, 2010, Sprint has failed to pay $2,804,488.27, including late payment penalties, for the CEA services provided by MIEAC at issue in this Complaint.

424352.1

2

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this action pursuant to: a) 28 U.S.C. § 1331, because MIEAC's claims arise under its FCC Tariff and the Communications Act; b) 28 U.S.C. Section 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000 and; c) 47 U.S.C. § 207, which vests the federal district courts with jurisdiction over suits seeking monetary damages for violations of the Communications Act.

9.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because Sprint does business in this judicial district and is thus subject to personal jurisdiction in this district.

## PARTIES

10.  MIEAC is a Minnesota corporation with its principal place of business at 300 South Highway 169, Minneapolis, Minnesota. MIEAC provides its CEA services through facilities located throughout the state.

11.  MIEAC is a carrier subject to the Communications Act and the FCC's regulations promulgated thereunder.

12.  Sprint is a Delaware limited partnership with its principal place of business in Overland Park, Kansas. Sprint offers interstate long distance services to customers in Minnesota and throughout the United States.

13.  Sprint is a carrier subject to the Communications Act and the FCC's regulations promulgated thereunder.

## LEGAL FRAMEWORK

14.  MIEAC's CEA services are a form of "access services."

15. Access services are the services offered by LECs and intermediate carriers like MIEAC to long distance carriers for the local origination and termination of long distance calls. The fees charged for originating and terminating access services are known as "access charges."

16. Interstate access services, including MIEAC's CEA services at issue in this Complaint, are regulated by the FCC.

17. Pursuant to Section 203 of the Communications Act, 47 U.S.C. § 203, providers of interstate access services, including CEA providers such as MIEAC, must file tariffs with the FCC that set forth the rates, terms, and conditions of their service offering.

18. Under Section 204(a)(3) of the Communications Act, 47 U.S.C. § 204(a)(3), access tariffs can be filed with the FCC on a "streamlined" basis. Section 204(a)(3) provides that such streamlined filings "shall be deemed lawful" and effective 15 days after the tariff is filed with the FCC, unless the FCC designates the tariff for hearing pursuant to 47 U.S.C. § 204(a)(1) prior to the end of the 15-day period.

19. Under the Communications Act and the "filed rate doctrine," tariffs filed with the FCC, including MIEAC's FCC Tariff, have the force of law, and constitute binding obligations on both the carrier (here, MIEAC), and the customer (here, Sprint).

20. The filed rate doctrine—also known as the filed tariff doctrine—is a common law construct that originated in judicial and regulatory interpretations of the Interstate Commerce Act. It provides that a carrier's tariff is the "exclusive source of the terms and conditions by which . . . [it] provides to its customers the services covered by

the tariff." *Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) (quotation and citation omitted). Under the filed rate doctrine, tariffs "bind both carriers and [customers] with the force of law." *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520 (1939). The tariffed "'rate of the carrier duly filed is the only lawful charge'" and "'deviation from it is not permitted upon any pretext.'" *AT&T Co. v. Central Office Tel.*, Inc., 524 U.S. 214, 222 (1998) (quoting *Louisville & Nashville R.R. Co. v. Maxwell*, 237 U.S. 94, 97 (1915)). "[B]ecause a tariff that is properly filed with the FCC carries the force of law, courts must strictly enforce its terms." *MCI Worldcom Network Services v. Paetec*, 2005 U.S. Dist. LEXIS 37786, *8 (ED VA) (citing *Bryan v. Bellsouth Commc'ns., Inc.*, 377 F.3d 424, 429 (4th Cir. 2004)). A customer must pay a carrier's tariffed rates even if the customer alleges fraud, unreasonable practices or some other wrongdoing by a carrier. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 130-32 (1990).

21.  The filed rate doctrine was codified into the Communications Act as Section 203(c). Section 203(c) "provides that every common carrier [such as MIEAC] must file a comprehensive schedule [i.e. tariff] with the [FCC] that shows all of the carrier's charges for interstate telecommunications services." 47 U.S.C. § 203(c). Section 203(c) further provides that it is unlawful for a common carrier to "charge, demand collect, or receive a greater or less or different compensation for such communication or for any service in connection therewith" other than "the charges specified" in the tariff. *Id.*

22. In addition to violating the filed rate doctrine, a carrier's refusal to pay the tariffed charges it owes is unlawful under Section 201 of the Communications Act, 47 U.S.C. § 201. Under Section 201, a carrier cannot engage in self-help by refusing to pay as Sprint has done here. Even if a carrier has a legitimate complaint concerning a tariffed service—which is not the case here—its only lawful remedy is to pay the tariffed charges and then file a complaint challenging the tariff at the FCC.

## **MIEAC'S CEA SERVICES**

23. MIEAC's FCC Tariff pursuant to which it offers its CEA services was originally filed with the FCC on April 3, 1991 and became effective on July 15, 1991, and has remained in effect since.

24. The rates in the FCC Tariff are revised biannually to reflect adjustments to MIEAC's charges for its CEA services, including most recently on June 16, 2008.

25. The June 16, 2008 revision to the FCC Tariff was filed pursuant to the streamlined filing procedures of Section 204(a)(3) of the Communications Act, 47 U.S.C. § 204(a)(3). The FCC did not designate the tariff filing for hearing within the prescribed 15-day period. The revised tariff—and thus MIEAC's current rates for its CEA services—became effective 15 days after the date of its filing, or July 1, 2008.

26. At all relevant times, the rates set forth in the FCC Tariff complied and comply with the requirements of federal law.

27. Pursuant to the FCC Tariff, long distance companies can connect to MIEAC's network at MIEAC's tandem switches located in Plymouth and Minneapolis

and/or at any of several other "Points of Termination" throughout Minnesota. FCC Tariff §§ 5.1.1, 8.

28. MIEAC's network is connected to the network of each of the Interconnected LECs through several "Points of Interconnection" throughout Minnesota. FCC Tariff § 2.6.

29. MIEAC carries its long distance carrier customers' traffic to/from their respective Point(s) of Termination to/from the Interconnected LECs' Points of Interconnection, routing the traffic through MIEAC's tandem switches.

30. MIEAC functions solely as an intermediate link between its long distance carrier customers and the Interconnected LECs.

31. It is the Interconnected LECs who serve the callers/called numbers placing or receiving the calls that MIEAC carries between its long distance carrier customers and the Interconnected LECs.

32. The Interconnected LECs charge their own originating and terminating access fees on long distance carriers in addition to the CEA charges imposed by MIEAC.

33. MIEAC plays no role in providing, or setting the rates for, the access services provided by the Interconnected LECs, and receives no revenue for those services from the Interconnected LECs or any other party.

34. MIEAC's only source of revenue for the traffic at issue in this Complaint is its CEA services charges to Sprint.

## MIEAC'S PROVISION OF CEA SERVICES TO SPRINT AND SPRINT'S FAILURE TO PAY FOR THOSE SERVICES

35. Sprint was one of MIEAC's first customers for its terminating CEA services and has used MIEAC's terminating CEA services from the early 1990s until the present.

36. Sprint also used and uses MIEAC's originating CEA services.

37. Over the years, pursuant to the FCC Tariff, Sprint ordered the CEA services it desired from MIEAC through multiple "Access Service Requests" ("ASRs"), specifying the number and type of connection links (known as "trunks") that Sprint wanted MIEAC to provide and the Point of Termination where Sprint would interconnect with MIEAC for exchanging traffic. FCC Tariff §§ 5.1, 5.2.

38. Sprint ordered all of the CEA services at issue in this Complaint.

39. MIEAC has submitted monthly invoices to Sprint for MIEAC's CEA services provided pursuant to the FCC Tariff.

40. Sprint paid MIEAC's monthly invoices for CEA services provided from the early 1990s through and including MIEAC's April, 2009 invoice.

41. Beginning with MIEAC's May 1, 2009 invoice (for April 2009 traffic) and continuing through this date, Sprint has refused to pay MIEAC's invoices for CEA services.

42. Despite Sprint's refusal to pay, MIEAC continued to provide both originating and terminating CEA services to Sprint, and Sprint continued to consume and benefit from those services, as they allowed Sprint's long distance customers to place and

receive interstate calls to and from the local calling areas served by the Interconnected LECs.

43. By letter dated, June 26, 2009, MIEAC formally demanded payment of the amounts withheld by Sprint. A true and accurate copy of MIEAC's demand letter is attached to the Complaint as Exhibit 2.

44. Notwithstanding MIEAC's demand letter, Sprint has refused and continues to refuse to pay MIEAC's tariffed CEA charges.

45. As of May 31, 2010, Sprint has failed to pay $2,804,488.27, including late payment penalties as provided for by the FCC Tariff, § 2.4.1(B)(2)(b), for the CEA services provided by MIEAC at issue in this Complaint.

46. Sprint continues to use MIEAC's CEA services for interstate calls made by Sprint's customers to and from the Interconnected LECs' serving areas. Accordingly, the amount owed by Sprint continues to increase.

47. Sprint has never contended that it did not order or that it did not use the CEA services in question.

48. In response to MIEAC's attempts to resolve this dispute, in May and June of 2009, Sprint advised MIEAC that it does not dispute MIEAC's rates, or the application of its rates, but rather the "nature of the traffic" sent to one of the Interconnected LECs.

49. According to Sprint, the Interconnected LEC in question is involved in arrangements with some of its customers (such as free conference calling providers) to generate incoming calls in order to generate terminating access charge revenue for the Interconnected LEC. In connection with this arrangement, Sprint alleges, the

Interconnected LEC is improperly sharing revenue with its conference calling provider customers. Sprint refers to this phenomenon as "access stimulation" or "access pumping."

50. Even though Sprint does not claim that MIEAC plays any role in the allegedly inappropriate relationship between the Interconnected LEC in question and the Interconnected LEC's customers engaged in "access stimulation," Sprint nevertheless has said that it will not pay MIEAC for the terminating CEA services provided by MIEAC.

51. Moreover, while Sprint takes issue with only the terminating CEA services provided by MIEAC for calls to a single Interconnected LEC, and does not dispute any of MIEAC's charges for originating CEA services, Sprint is withholding payment of all of MIEAC's CEA charges.

52. Sprint wrongfully contends that it is entitled to offset the amounts it owes for all MIEAC's CEA services since April, 2009 against amounts Sprint paid for the terminating CEA services that it disputes for the two year period prior to May, 2009 (June 2007 to April 2009).

53. Even if Sprint's dispute regarding certain of MIEAC's terminating CEA charges were valid—which it is not—it would provide no basis for Sprint's withholding of payment for services for which it does not dispute.

54. Whether there is or is not anything improper about the traffic that Sprint characterizes as access stimulation, the nature of that traffic is irrelevant to Sprint's obligation to pay MIEAC for MIEAC's CEA services that Sprint has ordered and used pursuant to the FCC Tariff.

55. MIEAC's sole function with respect to the terminating traffic that Sprint disputes is to take the calls delivered to MIEAC by Sprint and route them on Sprint's behalf to the appropriate Interconnected LEC.

56. MIEAC has no way of determining which of the calls it carries from Sprint to the Interconnected LECs fall into the category of calls that Sprint alleges is inappropriate. MIEAC treats this traffic just as any other type of traffic that transits its network from Sprint to the Interconnected LECs.

57. MIEAC has no involvement whatsoever in any arrangements between the Interconnected LEC in question and the Interconnected LEC's customers and receives no revenue whatsoever from either the Interconnected LEC or any of the Interconnected LEC's customers for the Sprint traffic that MIEAC carries.

58. MIEAC has no ownership interest in any Interconnected LEC, no Interconnected LEC has any ownership interest in MIEAC, and no entity has an ownership interest in both an Interconnected LEC and MIEAC.

59. It is a violation of MIEAC's FCC Tariff for Sprint to withhold payment from MIEAC based on Sprint's objections regarding the nature of services provided by another carrier. Section 2.1.1(B) of the tariff states that "MIEAC shall be responsible only for the installation, operation and maintenance of the services it provides."

60. Sprint's use of MIEAC's terminating CEA services is entirely voluntary. As Section 6.1 of the FCC Tariff makes clear, MIEAC's long distance carrier customers "may, at their option choose to terminate all or a portion of their traffic through the use of other Access Service providers other than MIEAC."

61. Sprint can purchase and could have purchased during the entire period it has used MIEAC's terminating CEA services functionally equivalent services from alternative provides.

62. At no time has Sprint submitted an order canceling CEA services from MIEAC, which it has a right to do under section 5.2.4 of the FCC Tariff.

63. To the contrary, on December 30, 2008 (just four months prior to stopping all payment to MIEAC), Sprint submitted a new ASR for substantial additional CEA services to carry additional Sprint traffic. A true and accurate copy of this ASR is attached to this Complaint as Exhibit 3.

64. The new CEA services facilities ordered by Sprint were installed by MIEAC and were paid for by Sprint on or before the payment due date of May 1, 2009.

65. Accordingly, there can be no doubt that Sprint anticipated that its traffic was increasing; Sprint ordered additional facilities to carry such increased traffic; Sprint paid MIEAC for the processing of its ASR and for the installation of additional facilities; Sprint accepted the facilities that MIEAC installed; and Sprint began sending additional traffic to MIEAC in February of 2009. At no point during the time that Sprint was increasing its capacity to use MIEAC's facilities did Sprint express dissatisfaction with MIEAC's services. Yet, by May 1, 2009, two months after Sprint began sending additional traffic to MIEAC over these new facilities, Sprint refused to pay MIEAC's tariffed rates for any and all of the traffic that it sends to MIEAC.

66. Moreover, not only did Sprint choose to send its own traffic to MIEAC, upon information and belief, Sprint sold use of its facilities to other carriers to carry the

other carriers' traffic and delivered that traffic to MIEAC as well for MIEAC to terminate.

67. While Sprint has refused to pay MIEAC since May, 2009 (for April usage), Sprint has continued to send its traffic to MIEAC and continued to bill and collect from its own customers for long distance service.

68. As a result of Sprint's failure to pay MIEAC's tariffed charges for the interstate CEA services at issue in this Complaint, as of May 31, 2010, MIEAC has been damaged in the amount of $2,804,488.27, including late payment penalties.

69. Unpaid CEA charges are accruing daily as Sprint continues to withhold amounts due for MIEAC's CEA services, even as Sprint continues to use MIEAC's services for Sprint's economic benefit.

## COUNT I
### (Collection of Amounts Owed Under Interstate Tariff)

70. MIEAC repeats and realleges each and every allegation contained in paragraphs 1 to 69 of this Complaint as if fully set forth herein.

71. MIEAC has provided interstate terminating and originating CEA services to Sprint pursuant to MIEAC's FCC Tariff.

72. Under Section 203 of the Communications Act and the filed rate doctrine, the FCC Tariff has the force of law and MIEAC is entitled to collect, and Sprint is obligated to pay, MIEAC's tariffed charges for the CEA services ordered and used by Sprint pursuant to the FCC Tariff.

73. Sprint has failed to pay the CEA charges that it owes under the FCC Tariff.

74. Sprint has failed to pay the late charges that it owes under the FCC Tariff.

75. MIEAC has been damaged, and continues to be damaged, by Sprint's refusal to pay the CEA charges and late fees it owes under MIEAC's FCC Tariff. MIEAC is entitled to recover these amounts, or such other damages as may be established at trial.

## COUNT II
### (Violation of Section 201 of the Communications Act)

76. MIEAC repeats and realleges each and every allegation contained in paragraphs 1 to 75 of this Complaint as if fully set forth herein.

77. Sprint is required to pay MIEAC's interstate CEA charges as set forth in the FCC Tariff.

78. Sprint has failed to pay the interstate CEA charges and associated late fees it owes under the FCC Tariff.

79. Section 201(b) of the Communications Act requires that the practices of common carriers be "just and reasonable," and provides that all unjust and unreasonable practices are unlawful. 47 U.S.C. § 201(b).

80. Sprint has engaged in unjust and unreasonable practices by engaging in self-help by refusing to pay MIEAC's interstate CEA charges for services that MIEAC has provided to Sprint.

81. Sprint's refusal to pay MIEAC's tariffed interstate CEA charges for services MIEAC has provided, and continues to provide, constitutes an unjust and unreasonable practice in violation of section 201(b) of the Act.

82. MIEAC has been damaged by Sprint's practice of refusing to pay the access charges and late fees it owes under MIEAC's FCC Tariff. MIEAC is entitled to recover these amounts, or such other damages as may be established at trial.

83. Sprint's conduct constitutes a violation of Section 201(b) of the Act. As such, MIEAC is entitled to reasonable attorneys' fees pursuant to Section 206 of the Act.

84. MIEAC is entitled to bring this claim under Section 207 of the Communications Act, 47 U.S.C. § 207.

## COUNT III (Alternative Claim) (Quantum Meruit)

85. MIEAC repeats and realleges each and every allegation contained in paragraphs 1 to 84 of this Complaint as if fully set forth herein.

86. While MIEAC believes that the services it has provided, and continues to provide to Sprint, constitute originating or terminating CEA services as set forth in the FCC Tariff and that the rates set forth therein apply to the services provided to Sprint, Sprint may contend otherwise.

87. MIEAC pleads this Count III as an alternative to Count I should the Court find that any of the Services that MIEAC provided to Sprint did not meet the terms and conditions of MIEAC's FCC Tariff or are not subject to the rates contained therein.

88. Sprint ordered interstate CEA services from MIEAC.

89. MIEAC has provided, and continues to provide, valuable CEA services to Sprint in response to Sprint's orders for such services.

90. Sprint has accepted, and used the CEA services that MIEAC has provided, and continues to provide, to Sprint.

91. Any alleged distinction that Sprint may assert between the MIEAC's interstate CEA terminating access services as tariffed and the service used by Sprint in no way affected Sprint's use of those services to enable Sprint's customers to place calls to called parties served by the Interconnected LECs.

92. The services that MIEAC provided to Sprint are functionally the same as MIEAC's tariffed interstate CEA service.

93. Upon information and belief, Sprint received payment from its customers for the long distance calls its customers made to called parties served by the Interconnected LECs and for which Sprint used MIEAC's services.

94. It was at all times foreseeable that MIEAC expected to be paid for the access services it provided to Sprint.

95. Sprint has received invoices from MIEAC for all of the CEA services that MIEAC has provided to Sprint.

96. Sprint has failed to pay MIEAC for the CEA services.

97. If it is found that the services that MIEAC provided to Sprint do not for some reason fall within the technical definition of interstate CEA service as set forth in MIEAC's FCC Tariff, MIEAC is entitled to receive from Sprint the value of those services under the doctrine of quantum meruit.

98. The reasonable and fair market value of the services for which Sprint has refused to pay is established by MIEAC's tariffed rates.

## COUNT IV (Alternative Claim)
## (Unjust Enrichment)

99. MIEAC repeats and realleges each and every allegation contained in paragraphs 1 to 98 of this Complaint as if fully set forth herein.

100. While MIEAC believes that the services it has provided, and continues to provide to Sprint, constitute originating and terminating CEA services as set forth in the FCC Tariff and that the rates set forth therein apply to the services provided to Sprint, Sprint may contend otherwise.

101. MIEAC pleads this Count IV as an alternative to Count I should the Court find that any of the Services that MIEAC provided to Sprint did not meet the terms and conditions of MIEAC's FCC Tariff or are not subject to the rates contained therein.

102. Sprint ordered interstate CEA services from MIEAC.

103. MIEAC has provided, and continues to provide, valuable access services to Sprint in response to Sprint's orders for such services.

104. Sprint has accepted, and used the access services that MIEAC has provided, and continues to provide, to Sprint.

105. Any alleged distinction that Sprint may assert between MIEAC's interstate CEA services as tariffed and the service used by Sprint in no way affected Sprint's use of those services to enable Sprint's customers to place calls to called parties served by the Interconnected LECs.

106. The services that MIEAC provided to Sprint are functionally the same as MIEAC's tariffed interstate CEA service.

107. Upon information and belief, Sprint received payment from its customers for the long distance calls its customers made to called parties served by the Interconnected LECs and for which Sprint used MIEAC's services.

108. It was at all times foreseeable that MIEAC expected to be paid for the CEA services it provided to Sprint.

109. Sprint has received invoices from MIEAC for all of the CEA services that MIEAC has provided to Sprint.

110. Sprint has failed to pay MIEAC for the CEA services.

111. Sprint has benefited from the services provided by MIEAC in that Sprint has collected revenues from its customers for the long distance calls placed over MIEAC's facilities but has failed to pay MIEAC for the services it received.

112. Sprint has thus been unjustly enriched by receiving the benefits of MIEAC's services without paying for those services.

113. If it is found that the services that MIEAC provided to Sprint do not for some reason fall within the technical definition of interstate CEA service as set forth in the FCC Tariff, MIEAC is entitled to receive from Sprint the value of the benefit conferred under the doctrine of unjust enrichment.

114. The reasonable and fair market value of the benefit that Sprint has received but for which Sprint has refused to pay is established by MIEAC's tariffed CEA rates.

115. Sprint would be unjustly enriched if it were permitted to use MIEAC's CEA charges without paying the reasonable value thereof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment against Sprint for all direct and consequential damages incurred by Plaintiff, in an amount to be determined at trial, but no less than the interstate CEA charges that Sprint owes MIEAC or would owe MIEAC under the FCC Tariff, together with the associated tariffed late fees and prejudgment interest;

2. Award Plaintiff reasonable attorneys fees and the costs of this action, pursuant to 47 U.S.C. Section 206;

3. Issue a preliminary injunction barring Sprint from continuing to engage in conduct alleged herein and directing Sprint to pay MIEAC's tariffed CEA charges if Sprint continues to use Plaintiff's services; and

4. Grant such other relief as the Court deems just and proper.

Dated: June 21, 2010                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                                        By: s/ Christopher K. Sandberg
                                            Christopher K. Sandberg (95485)
                                        100 Washington Avenue South
                                        Suite 2200
                                        Minneapolis, MN 55401
                                        Telephone: 612-339-6900
                                        Telecopier: 612-339-0981
                                        cksandberg@locklaw.com

                                        ATTORNEYS FOR PLAINTIFF
                                        MINNESOTA INDEPENDENT
                                        EQUAL ACCESS CORPORATION

OF COUNSEL
Albert H. Kramer
Jacob S. Farber
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Tel. (202) 420-2200
Fax (202) 420-2201